UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRISTOPHER MCCANTS, ) | CASE NO. 1:11 CV 0664 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| ORRIN LYNN TOLLIVER, JR., *et al.*, ) | AND ORDER |
| ) | |
| Defendants. ) | |

*Introduction*

On April 1, 2011, plaintiff *pro se* Christopher McCants filed this action against Orrin Lynn Tolliver, Jr., James Louis McCants d/b/a Jimi Mac Music & OG Music, Cherry Lane Music Publishing Company, Inc., Will.i.am Music, Inc.[1], Will Adams and UMG Recordings (collectively, the "Defendants"). Plaintiff asserts this action arises under the "United States Copyright Act, 17 U.S.C. § 506."[2] He claims the Defendants never secured his permission to use his musical composition, "I Need a Freak." Plaintiff seeks an Order directing Defendants to cease payment of

---

[1] The company is incorporated as "will.i.am music, inc.;" therefore, the Court will refer to it as such.

[2] No private right of action exists under this provision of the copyright statute authorizing imposition of a fine for fraudulent copyright notice. *See Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir.1986). Later in the complaint, however, Plaintiff references 17 U.S.C. § 106, which does provide civil relief. Therefore, the Court will address his claims under 17 U.S.C. § 106.

any monies, funds, royalties, fees and benefits. He also asks for an accounting of all gains, profits and benefits derived through Defendants' alleged infringement of Plaintiff's work; and, finally, damages and attorney fees.

Defendants BMG Rights Management, as successor-in-interest to Cherry Lane Music, Will Adams, and will.i.am music, inc. filed a Motion to Dismiss pursuant to Federal Civil Rule 12(b)(6) on April 29, 2011. Six days later, defendant UMG Recordings filed a Notice of Joinder in the April 29, 2011 Motion to Dismiss. Plaintiff opposed the Motion, the Moving Defendants replied and Plaintiff filed a sur-reply on July 5, 2011. He also moved this Court to enter a Default Judgment against defendant Orrin Lynn Tollier, Jr.

On June 28, 2011, Plaintiff filed a Motion for Injunctive Relief (Dkt.#18) seeking to enjoin BMG as successor-in-interest to Cherry Lane and "non-defendants Royalty Network and BMI Corporation" from releasing escrow funds held on behalf of Orrin Tolliver.[3] The funds allegedly reflect a $1,185,000.00 judgment awarded to Mr. Tolliver on June 23, 2011 by the United States District Court for the Southern District of New York in Case No.05-10840. For the reasons stated below, the moving Defendants' Motion to Dismiss is granted, the Motions for Default Judgment and Injunctive Relief are denied as moot, and this action is dismissed on the merits.

*Background*

In 1982, Plaintiff entered into an oral agreement to co-author a musical composition entitled, "I Need a Freak"(hereinafter "the Song").[4] He claims he composed, performed and

---

[3]Cherry Lane Music opposed the Motion arguing, *inter alia*, that it is not holding any money in escrow for Mr. Tolliver.

[4]In his Motion for Injunctive Relief, Plaintiff explains he had "an oral agreement with Defendants (continued...)

recorded the "music portion" of the Song with his brother, Samuel McCants.  In 2002, however, Orrin Tolliver allegedly made knowing misrepresentations "to obtain a Copyright" for the Song. Plaintiff became aware of these alleged false statements when "he applied for a Copyright" of the Song on December 1, 2010. (Compl. at ¶15.)  He learned that James McCants and/or Orrin Tolliver licensed the musical portion of the Song to will.i.am, and Cherry Music for use by the musical group, Black Eyed Peas.  The Song was sampled and recorded by the Black Eyed Peas in a musical composition entitled "My Humps."  The Black Eyes Peas performed a portion of the Song, which Plaintiff "co-authored and performed several years earlier."

Messrs. Tolliver, McCants, Adams and will.i.am failed to provide Plaintiff his "rightful share of the new musical composition 'My Humps.'" (Compl. at ¶ 20.)  He argues these Defendants exploited the Song when they received income from its sales without his permission. The Black Eyed Peas recorded and released "My Humps" on their album "Monkey Business" through A&M Records, a wholly owned entity of UMG.  UMG then allegedly exploited the Song when it included it in the Black Eyed Peas' performance of "My Humps."  For their "authoring and publishing of 'My Humps'" without Plaintiff's consent as the co-author and performer, Plaintiff asserts the Defendants violated the Copyright Act.

*Standard of Review*

To survive a Rule 12(b)(6) motion, a plaintiff is obligated "to provide the grounds of his entitlement to relief . . . labels and conclusions, and a formulaic recitation of the elements of

---

⁴(...continued)
James Louis McCants, Orrin Lynn Tolliver, Jr. and his brother Sam McCants where it was agreed that if the song 'I need [sic] a Freak' were to make a profit everyone mentioned above would share equally any profit made." (Pl.'s Mot. Inj. Rel. at 2.)

a cause of action will not do." *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, __127 S.Ct. 1955, 1964-65 (2007)). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citation and quotation marks omitted). If, however, an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir.1993)). A Rule 12(b)(6) motion cannot be granted merely because the Court may not believe the plaintiff's factual allegations. *Id*.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (citations and quotation marks omitted). Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

*Discussion*

*17 U.S.C. §106*
*Copyright Infringement*

Federal courts have exclusive original jurisdiction over actions arising under the federal copyright laws. *See* 28 U.S.C. § 1338(a). An action "arises under" the copyright laws "if the

complaint is for a remedy expressly granted by the [Copyright] Act, ... or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915(1965).

The Copyright Act provides that "[c]opyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co[-]owners of copyright in the work." 17 U.S.C. § 201(a). Under the Copyright Act:

> [I]t is the exclusive right of the owner of the copyright to do and to authorize any of the following:
>
> > (1) to reproduce the copyrighted work in copies or phonorecords;
> >
> > (2) to prepare derivative works based upon the copyrighted work;
> >
> > (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> >
> > (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> >
> > (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> >
> > (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. While Plaintiff asserts entitlement to the rights of a copyright holder, he does not

allege he has a registered copyright in the Song. Rather, he contends that his ownership rights are derived from his status as co-author of the Song. This role as co-author was presumably established by oral agreement with his brother in 1982. Thereafter, either his brother, or Orrin Tolliver registered a copyright in the Song without acknowledging Plaintiff as a co-author.

Defendants argue Plaintiff is not entitled to relief under the Copyright Act because he has no registered copyright in the Song. Section 501 of the 1976 Copyright Act gives the power to claim infringement only to the copyright owner or exclusive licensees. *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483-84 (1st Cir.1985) ("If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright .... Absent this showing, a plaintiff does not have standing to bring an action under the [1976] Copyright Act.") Without an ownership interest in the copyright a party lacks standing to sue under the Copyrigt Act. *R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 684 n. 11 (S.D.Tex.2000).

Indeed, Plaintiff admits that Orrin Tolliver has a registered copyright in the Song. Therefore, his only attachment to a copyright interest would be through co-authorship. The only vehicle through which that co-authorship could be established was by oral agreement in 1982. This Court is mindful that "[t]he federal courts having exclusive jurisdiction to determine the statutory infringement, [also] have incidental power to hear and decide claims of title which necessarily bear upon the ultimate question of infringement," 3 NIMMER ON COPYRIGHT § 12.01 at 12-6-12-7 (1978) (citations omitted), and the general rule is that "an action 'arises under' the Copyright Act if ... the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ...". *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965).

Any infringement action Plaintiff seeks must be predicated on the oral agreement that he co-authored the Song and, thus, is a joint owner of the copyright. *See Picture Music, Inc. v. Bourne, Inc*., 314 F.Supp. 640, 645 (S.D.N.Y. 1970), aff'd 457 F.2d 1213 (2d Cir.), *cert. denied*, 409 U.S. 997 (1972). It seems clear, therefore, that the true purpose of this Complaint is to obtain a declaration from this Court that Plaintiff is indeed a joint owner of the copyright. An action does not 'arise under' the Copyright Act where there are no facts alleged that would support a claim of infringement. *Harms*, 339 F.2d 828. To the extent Plaintiff must first establish his co-author status through a potential contractual dispute, this Court lacks jurisdiction.

An action to establish title is not one "arising under" the Copyright Act so as to give the federal courts jurisdiction under 28 U.S.C. § 1338(a). *See Perry v. Broadcast Music, Inc*., No. 00-6103, 2001 WL 1298950, at *1 (6th Cir.Aug. 7, 2001); *see, e.g., T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 824 (2d Cir.1964). In particular, "the federal grant of a ... copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *Harms*, 339 F.2d at 826. Questions of title dependent on general common law or equitable principles are more appropriately referred to a state court, *Peay v. Morton*, 571 F. Supp.108, 112-13 (D.C.Tenn.,1983), even when the complaint is framed in terms of copyright infringement. *See T.B. Harms v. Eliscu*, 226 F.Supp. 337 (S.D.N.Y.), *aff'd* 339 F.2d 823 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965). Courts have emphasized that even if artful drafting of the complaint sufficiently invoked federal jurisdiction, the complaint may still be dismissed for failure to state a claim for relief in "cases that are couched in terms of copyright but that, in fact, seek to vindicate rights created under state law, e.g., contractual rights to ownership or royalties." *Vestron, Inc. v. Home Box Office, Inc*., 839 F.2d 1380, 1382 (9th Cir.

1988) (citing, *e.g., Dolch v. United California Bank*, 702 F.2d 178 (9th Cir. 1983)). Resolution of this dispute does not involve comparison or construction of the copyrighted work. Nor is there any need to interpret the Act. *See Berger v. Simon & Schuster*, 631 F.Supp. 915, 917 (S.D.N.Y.1986); *Franklin v. Cannon Films, Inc.*, 654 F. Supp. 133, 135 (C.D.Cal. 1987).

Even if this Court established Plaintiff's status as a co-author, his copyright claim against Orrin Tolliver, James McCants and their licensees would fail. A joint copyright owner cannot sue his co-owner or his co-owner's licensee for infringement, *Donna v. Dodd, Mead & Co.*, 374 F.Supp. 429, 430 (S.D.N.Y. 1974); *Harrington v. Mure*, 186 F.Supp. 655, 657 (S.D.N.Y. 1960), because a copyright owner cannot infringe his own copyright. *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir. 1965), *cert. denied*, 384 U.S. 928 (1966). Plaintiff admits Tolliver and/or McCants licensed the use of the musical portion of the Song to will.i.am and Cherry for use by the Black Eyed Peas. *See generally*, 3 NIMMER ON COPYRIGHT, §§ 10.01-10.15, at 10-4-10-108 (1978). As the Defendants noted, each co-owner of a copyright "has an independent right to use or license the use of the copyright." *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984). Moreover, Plaintiff does not dispute that Tolliver and/or McCants were at least co-authors or that Cherry and will.i.am are licensees of Tolliver and/or McCants. As the District Court of New York aptly noted:

> If a stranger exploits the composition and deprives the creator of his right to exclusive enjoyment of the fruits of his efforts, an infringement action will lie. But if a co-author, one who cannot be charged with infringement, authorizes the exploitation of the work and the exclusion of his collaborator, a technicality bars access to the federal court. The alleged technicality, however, is a direct result of the congressional plan with respect to copyright litigation. ... Congress left a considerable residue of power in the state courts to pass on 'copyright questions'-among them, questions arising in contract

-8-

and title disputes.

*Harrington v. Mure*, 186 F.Supp. 655, 658 (S.D.N.Y. 1960). This being so, neither Tolliver nor McCants can infringe any copyright that Plaintiff, as co-author, may possess. Plaintiff has failed to allege any action by the Defendants that would support a claim of infringement.

*Fraud*

Under the Copyright Act, "immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration." *Data General Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147, 1161 (1st Cir.1994); *see Automated Solutions Corp. v. Paragon Data Systems, Inc.*, No. 1:05 CV 1519, 2008 WL 2404972 (N.D. Ohio June 11, 2008). Plaintiff alleges Tolliver "knowingly made false representations of material facts to obtain a Copyright" to the Song. (Compl. at ¶16). No further details or additional facts are alleged. The test for materiality turns on whether "its discovery is not likely to have led the Copyright Office to refuse the application." *Id*. "Mistakes such as an incorrect date of creation or **failure to list all co-authors** easily qualify as immaterial because the Copyright Office's decision to issue a certificate would not be affected by them." *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 158 (1st Cir. 2007)(citing *Data Gen. Corp*, 36 F.3d at 1163)(stating that inadvertent failures to list preexisting works or coauthors are encompassed by the rule excusing immaterial mistakes)(emphasis added). "[W]here a plaintiff's registration was procured through fraud ... the registration becomes invalid and the courts lack jurisdiction over the case." *Torres-Negron*, 504 F.3d. at 162; *see* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER on Copyright § 7.20, at 7-201 ("[A] misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting

an infringement action ... If the claimant wilfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid.").

The Defendants have successfully argued that Plaintiff's fraud allegations fall short of the specificity required by Federal Civil Rule 9(b). In any complaint averring fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." FED. CIV. R. 9(b). Instead, of providing specific details, Plaintiff argues in his Opposition brief that only the Defendants have the information he needs to support his allegations. To that end, he seeks to establish his claims through the discovery process. This is an unavailing option.

It is well-established that "there is no general right to discovery upon filing of the complaint."*Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 566 (6th Cir.2003). "[T]he very purpose of Fed.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Id*. (internal quotation marks omitted). The significant point is that, when a plaintiff files a complaint that fails to state a claim as a matter of law, he cannot complain that he is entitled to discovery to state his claim. In the absence of a cognizable claim, Plaintiff has no right to any discovery---particularly when he has failed to allege the requisite elements of a fraud claim.

Finally, Plaintiff's underlying claim is that a valid copyright exists, which entitles him to recover damages. By attacking Mr. Tolliver's application for copyright registration based on fraud, however, he invites the Copyright Office to invalidate the registration. An allegation of fraud requires a claim that the Copyright Office should have rejected the application. *See* NIMMER ON COPYRIGHT § 7.20, at 7-201  If the fraud argument were successful, the net effect would be an

elimination of this Court's jurisdiction. *See Torres-Negron*, 504 F.3d at160 (an invalid registration [involving material errors, fraud, or an incomplete application] nullifies the federal court's subject matter jurisdiction.)  Where a plaintiff's copyright registration has been invalidated because of a finding of fraud or intentional misrepresentation on the registration application, the First, Second, Third, Fifth and Eleventh Circuit Courts have concluded that the plaintiff's copyright is simply "unenforceable" and have dismissed the claims without discussion of the merits, again indicating that a valid registration is necessary for federal jurisdiction. *See Fonar Corp. v. Domenick,* 105 F.3d 99, 104 ($2^d$ Cir. 1997); *Lenert v. Duck Head Apparel Co. Inc.*, 99 F.3d 1136, 1136 (5th Cir. 1996); *Masquerade Novelty, Inc. v. Unique Industries, Inc .,* 912 F.2d 663, 667 (3d Cir.1990); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 828 (11th Cir.1982). Thus, as a matter of course, Plaintiff cannot seek to invalidate the same copyright registration through which he is asserting entitlement to damages.

## *Conclusion*

Accordingly, Defendants BMG Rights Management, as successor-in-interest to Cherry Lane Music, Will Adams, and will.i.am music, inc's Motion to Dismiss pursuant to Rule 12(b)(6) (Dkt.# 9), in which Defendant UMG is joined, is **granted**.  Further, this Court finds *sua sponte* that Plaintiff has failed to state a claim for relief against Defendants James Louis McCants d/b/a Jimi MAC Music & OG Music and Orrin Lynn Tolliver, Jr.  Because Plaintiff has failed to state a claim upon which this Court can grant relief, his Motion for Default Judgment (Dkt.# 14) and Motion for Injunctive Relief (Dkt.#18) are **denied** as moot and this action is dismissed.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 7/14/11                                       UNITED STATES DISTRICT JUDGE